IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **BETTY LOU GAINES,** | § | |
| | § | |
| **v.** | § | **A-06-CA-673 LY** |
| | § | |
| **CAROLE STRAYHORN, ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff's Motion for Leave to File Second Amended Complaint (Clerk's Doc. No. 41). The District Court referred the motion to the undersigned Magistrate Judge for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. After reviewing the parties' briefs, relevant case law, as well as the entire case file, the undersigned issues the following Report and Recommendation to the District Court.[1] On January 23 the Court held hearing on this and a related matter.

## II.   BACKGROUND

Plaintiff alleges that on May 12, 2004, Will Cunnihan and Diane Thomas, employees of the Comptroller's Office (at which Defendant Carole Strayhorn was the Comptroller at the time), invited

---

[1] The issue of whether to allow a complaint to be amended would usually be resolved via an order from this Court (as it is usually not of a dispositive nature), *see* FED. R. CIV. P. 72(a). Through the instant amendment, however, the Plaintiff seeks to add a new § 1983 claim and two additional defendants, and Defendants object to the amendment on the grounds of futility, contending that the proposed new claims fail to state a claim. A ruling on the motion could therefore be viewed as dispositive of the proposed new claims. Thus, out of an abundance of caution the Court submits a Report and Recommendation rather than an order.

two local TV reporters to accompany them on an inspection of Woodside Trails (or "the Camp").[2] The reporters were given access to the Camp, Plaintiff contends, because Cunnihan and Thomas allowed them to pose as state government employees. Once inside, the reporters filmed, with a hidden camera, the Plaintiff, Woodside Trails, the campers, and their campsites. Some of the footage obtained was aired shortly thereafter on a San Antonio TV station's newscast. The Plaintiff also alleges that the reporters, acting as Defendants' agents, flew a helicopter at low altitudes over the Camp and filmed the children and Plaintiff's home. All of this was part of what Plaintiff has called Defendants' "campaign" to shut down Woodside Trails. On August 25, 2004, TDFPS revoked the Camp's license, thereby effectively shutting down Woodside Trails. Furthermore, on February 18, 2005, TDFPS, via a letter sent by TDFPS employee Amy Chandler, revoked Plaintiff's Child Care Administrator's License (after a hearing Plaintiff's license was reinstated).

On August 24, 2006, Plaintiff filed her Original Complaint, followed six days later by her First Amended Complaint. On December 13, 2006, Plaintiff sought leave to file her Second Amended Complaint. In this latest complaint, Plaintiff seeks to add Cunnihan and Thomas as parties on a new § 1983 claim against them (and the Comptroller Defendants), for a violation of her Fourth Amendment rights stemming from the inspection of the Camp on May 12, 2004. The Second Amended Complaint also adds a new count, requesting injunctive relief against TDFPS for its allegedly unconstitutional practice of revoking licenses without proper notice and hearing, and seeks to add Amy Chandler as a new defendant for her role the license revocation. Plaintiff also alleges a new count dealing with TDFPS's alleged violation of the Religious Freedom Act of 1978, and requests injunctive relief. Finally, the Second Amended Complaint asks for declaratory relief that

---

[2] For a detailed discussion of the facts see the accompanying Report and Recommendation regarding Defendants' 12(b)(6) Motion to Dismiss.

the documents relating to her state administrative hearing be made available to the public (they are currently labeled confidential). Cunnihan and Thomas, along with the Comptroller Defendants, object to the proposed amendment, contending the Fourth Amendment claim is time-barred and fails to state a claim. Likewise, Chandler and the TDFPS defendants object to the amendment. Chandler contends the claim against her is time-barred, and TDFPS raises Eleventh Amendment immunity issues.[3]

## II. ANALYSIS

The claims and parties dealing with the Comptroller Defendants' will be dealt with first, then the Court will address those new claims relating to TDFPS and Amy Chandler.

**A.     Cunnihan, Thomas, and the § 1983 Fourth Amendment Claim.**

Anticipating Cunnihan and Thomas' argument that their joinder should not be permitted because the claims against them are time-barred, Plaintiff contends in her motion for leave that the original causes of action brought in the First Amended Complaint were timely when filed, and that the claims against Cunnhian and Thomas arise out of the same events and occurrences. *See* Clerk's Doc. No. 41 at ¶ 13. With regard to the "relation back doctrine" Plaintiff relies upon for this argument, FED. R. CIV. P. 15(c) provides:

> An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

---

[3] Several aspects of the proposed amendment are uncontested. Specifically, the Second Amended Complaint drops Counts VII (Texas constitutional claims); Count IX (gross negligence); Count X (intentional infliction of emotional distress); and Count XI (abuse of process).

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

FED. R. CIV. PROC. 15(c).

Neither party argues that the alleged unreasonable search that took place on May 12, 2004, did not arise out of the "occurrence" set forth in the original complaint. *Id.* 15(c)(1). However, the Fifth Circuit has noted there is a two-prong test inherent in subpart (3) that must be met in order to amend a complaint to add a party under Rule 15(c): first, there is the "proper notice" requirement, and, second, the "mistake" clause. *Jacobsen v. Osborne*, 133 F.3d 315, 319-20 (5th Cir. 1998) (quoting the Advisory Committee Notes from a 1991 Amendment to the Rule).

Plaintiff argues that her Original Complaint pleads that the Comptroller "and her staff" perpetrated the search on May 12, 2004, therefore proper notice was given to Cunnihan and Thomas of this potential claim by the Original Complaint. Defendants argue that neither the "notice" nor "mistake" clause requirements have been satisfied; they argue that there was no mistake concerning the identity of Cunnihan and Thomas and that the phrase "and her staff" does not provide proper notice.

The Fifth Circuit has held that courts "will infer notice if there is an identity of interest between the original defendant and the defendant sought to be added or substituted." *Jacobsen*, 133 F.3d at 320. "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* (citing *Kirk v. Cronvich*, 629 F.2d 404, 407-08 (5th Cir.

1980). Defendants contend that the Comptroller's office employs 2,000 people, and therefore pleading "and her staff" does not bridge the "identity of interest" gap. *Id*.

The Court need not resolve this issue – though it is worth noting that, pragmatically speaking, while all 2,000 employees could be deemed "staff," Cunnihan and Thomas obviously enjoyed a much closer working relationship with Strayhorn than, say, a low-level administrative assistant.[4] The *Jacobsen* Court noted that the goal of Rule 15(c)(3) was "to correct a mistake concerning the identity of a party" and that the First, Second and Seventh Circuit have joined in this interpretation. *See id*. at 321 (citing *Wilson v. United States Government*, 23 F.3d 559, 562-63 (1st Cir. 1994), *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466 (2d Cir. 1995), and *Worthington v. Wilson*, 8 F.3d 1253, 1257 (7th Cir. 1993)). Here, as in *Jacobsen*, there was no mistake concerning the identity of the proper party as required by Rule 15(c)(3); Plaintiff did not name the wrong defendant, she simply failed to name these defendants at all. Morover, *unlike* the facts of *Jacobsen* where the plaintiff was unable to identify the defendant he sought to add, the Court cannot, with any confidence, say that Plaintiff lacked the knowledge of the proper party (something she has never plead). Instead, it appears that she simply chose to limit her claim to the defendants named in the original complaint; therefore, this fact further mitigates against any prudential concerns that would cut toward allowing her leave to amend her complaint. In any event, it is safe to say that there was no mistake as to Cunnihan's and Thomas's identity, so the relation back doctrine is not available to Plaintiff.

Plaintiff next argues that, in any case, the "continuing tort" doctrine tolls the statute of limitations for the prospective § 1983 Fourth Amendment claim such that it is not time-barred. The limitations period for a claim brought under § 1983 is determined by the general statute of

---

[4]The Court notes that it is common for an agency director to have a personal "staff" in her office, and this understanding of the term would clearly apply to far fewer than the 2,000 employees of the Comptroller's office.

limitations governing personal injuries in the forum state.  *Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005).  Under Texas law, the claim must be brought "not later than two years after the day the cause of action accrues."  TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (Vernon 2005).  "Ordinarily, a cause of action under § 1983 accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Price*, 431 F.3d at 893 (citation omitted).

Plaintiff contends that because of the continuing nature of Defendants' campaign against Woodside Trails, the continuing tort doctrine applies here.  In support of her contention, Plaintiff cites first to *Adler v. Beverly Hills Hospital*, which held that the tort of false imprisonment was a continuing one, and therefore the statute of limitations begins to run "when the detention ends."  *Adler v. Beverly Hills Hospital*, 594 S.W.2d 153, 154 (Tex. Civ. App. – Dallas 1980).  Plaintiff argues that the Fifth Circuit recognized this doctrine in *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980) ("failure to provide needed and requested medical attention constitutes a continuing tort") and *Donaldson v. O'Connor*.  493 F.3d 507, 529 (5th Cir. 1974) (analogizing involuntary civil confinement to false imprisonment, a continuing tort), *vacated on other grounds*, *O'Connor v. Donaldson*, 422 U.S. 563 (1975).  Tying this all together, Plaintiff contends that the § 1983 violation "was composed of a pattern or series of improper actions by the Comptroller Defendants . . . including an unreasonable search and suppression of First Amendment rights, and did not cease until February 18, 2005 at the earliest, and that is the date that [the] limitation period should begin."  *See* Plaintiff's Post Argument Response at 10-11.

This argument is unconvincing.  Plaintiff is trying to stretch a discrete event involving Cunnihan and Thomas into a much larger § 1983 "scheme," spanning a much greater time frame.  Whatever the merits might be of a pleading that actually made that claim, Plaintiff's Second Amended Complaint certainly does not take that approach.  Plaintiff's complaint contains a number

of different § 1983 claims against Defendants for discrete actions, and by this proposed amendment Plaintiff seeks to add another discrete claim that is alleged to have occurred on May 12, 2004. Plaintiff is trying to have her proverbial cake and eat it too. The weak analogy between a false imprisonment tort and an alleged unreasonable search is glaring: the search began and ended on May 12, 2004, and was not "continuing" in any meaningful sense of the word vis-a-vis one being falsely imprisoned. Nor does Plaintiff cite a case where a search was held to be continuing tort. Regardless, it is clear that the alleged search began and ended on May 12, 2004, and that the continuing tort doctrine does not toll the statute of limitations.

Plaintiff's final argument in support of her amendment is that, while she did not plead it *per se*, the Comptroller Defendants' and TDFPS's actions constitute a § 1983 conspiracy, a conspiracy which continued until February 18, 2005. Therefore (her unstated premise must be) the statute of limitations began to run on that date. While Plaintiff is correct that it is possible, in limited circumstances, to allege § 1983 conspiracy against a private actor (which, as established in the accompanying Report and Recommendation on Defendants' 12(b)(6) Motion to Dismiss, Defendants are), *Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 278 (5th Cir. 2001), her argument is barely colorable in the present context. Leaving aside the fact that this argument was not pled in any of her three complaints and even granting, for purposes of this argument, that the allegation of conspiracy is true, the issue, lest it be lost sight of, is when the statute of limitation began to run on Plaintiff's § 1983 Fourth Amendment allegation involving the alleged unreasonable search of May 12, 2004. Importantly, as Defendants point out, the Fifth Circuit has held that when pleading a civil conspiracy under § 1983, as opposed to prosecuting a criminal conspiracy, the statute of limitations begins to run from the moment the plaintiff becomes aware that she has suffered an injury or has sufficient information to know that she has been injured. *Holmes v. Texas A&M Univ.*, 145 F.3d 681, 684 (5

th Cir. 1998); *Helton v. Clements*, 832 F.3d 332, 334-35 (5th Cir. 1987). Given that Plaintiff learned of the alleged civil rights violation shortly after it happened – via the airing of the footage on the local news report – it makes no difference how long the alleged conspiracy festered.  Plaintiff was aware of the alleged Fourth Amendment violation in March of 2004, and did not seek to seek redress until December 2006, well beyond the limitations period.[5]

In sum, as to the addition of Cunnihan and Thomas and a claim under the Fourth Amendment, Plaintiff's Motion for Leave to File her Second Amended Complaint should be denied.  The alleged unreasonable search took place on May 12, 2004.  Given that Plaintiff has no persuasive arguments at her disposal as to why the two-year statute of limitations should be tolled, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003, the § 1983 Fourth Amendment cause of action based on the events of May 12, 2004, expired on May 13, 2006.  Plaintiff sought leave to file her Second Amended Complaint to add the Fourth Amendment claim on December 13, 2006.  Thus, Plaintiff should not be permitted to add a § 1983 Fourth Amendment claim, nor should be permitted to add Cunnihan and Thomas as defendants, as they are named as defendants solely on that time-barred claim.

**B.    TDFPS and Amy Chandler**

Amy Chandler first argues, through the Attorney General's office, that "[n]o factual allegation in the proposed Second Amended Complaint demonstrates any actionable conduct by Ms. Chandler that occurred after December 12, 2004, and which would not be time barred by the two-year statute of limitations applicable to Plaintiff's claims."  *See* TDFPS Defendants' Response in

---

[5] It is also worth noting that just today the Supreme Court, in *Wallace v. Kato*, held that the statute of limitations in a § 1983 Fourth Amendment false arrest claim begins to run on the day the claimant became detained as a result of legal process, not when, as the petitioner argued, he was released from custody.  549 U.S. ___ (2007).  Thus, it may be even generous, based on *Wallace*, to run the statute from the date Plaintiff became aware of her injury.

Opposition at 1. However, this is flatly contradicted by Plaintiff's proposed complaint, which clearly states that Chandler was the TDFPS employee who sent the February 18, 2005 letter telling Plaintiff that her license had been revoked. *See* Plaintiff's Second Amended Complaint at 27. Therefore, Chandler's action took place well within the two-year limitations period and it is recommended the Plaintiff be allowed to amend her complaint adding Amy Chandler as a defendant in this action.

For its part, TDFPS argues that they are protected by the Eleventh Amendment grant of immunity to states (and arms of the state) and are therefore not amenable to suit in federal court. Accordingly, TDFPS requests the Plaintiff not be permitted to add claims against it in the amended complaint. The Supreme Court has made it clear that the "ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). State agencies, such as the defendants being sued here, are "arms of the state" and therefore are protected by the Eleventh Amendment's grant of immunity. *Williams v. Dallas Area Rapid Transit*, 242 F.3d 318-20 (5th Cir. 2001). In *Garrett*, the Supreme Court made clear that Congress did not, and could not, rewrite Fourteenth Amendment law in order to uphold the ADA's application to the states. *Garrett*, 531 U.S. at 373-74. Therefore, TDFPS is a not a proper defendant in this lawsuit.

However, this constitutional rule is not hard and fast. The purpose of the *Ex parte Young* doctrine (or the *Young* fiction) is to allow plaintiffs asserting federal law claims to circumvent the state's sovereign immunity from suit by suing state officers instead. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 256 (5th Cir. 2005). Plaintiff notes in her Post Argument Response that she is requesting leave to amend her complaint so that she can name the Commissioner of TDFPS as a defendant in this lawsuit in his official and individual capacity. The Court recommends that this be granted.

## III.  RECOMMENDATIONS

Based on the above, the Magistrate Court **RECOMMENDS** that the District Court **GRANT IN PART, and DENY IN PART** Plaintiff's Motion for Leave to File Second Amended Complaint. *See* Clerk's Doc. No. 41.  The Court **RECOMMENDS** that the Motion be **DENIED** as to Plaintiff's request to add Diane Thomas and Will Cunnihan as Defendants, and be **DENIED** as to Plaintiff's request to add the proposed § 1983 Fourth Amendment cause of action for the events taking place on May 12, 2004.  The Court **RECOMMENDS** that the Motion be **GRANTED** as to Plaintiff's request to add Amy Chandler as a Defendant, and **GRANTED** so as to allow Plaintiff to name the Commissioner of TDFPS as a defendant pursuant to *Ex Parte Young*.  The Court **FURTHER RECOMMENDS** that all other changes contained in the proposed Second Amended Complaint (primarily non-substantive) be permitted.  **FINALLY**, the Court **RECOMMENDS** the Plaintiff be permitted 10 days from the date of the adoption of this Report and Recommendation to file a Second Amended Complaint that complies with the rulings recommended above.[6]

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

---

[6] As a side note, the Court will observe that Plaintiff's declaratory relief claim should be made under the federal declaratory judgment statute, 28 U.S.C. § 2201, not the Texas statute, as this matter is pending in federal court. *Assistmed, Inc. v. Conceptual Health Solutions, Inc.*, No. 3:05-CV-0880-D, Slip Copy, 2006 WL 3691003 (N.D. Tex. Dec. 14, 2006) (noting that Texas Uniform Declaratory Judgment Act is a state-law procedural device and is inapplicable in federal court).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 21st day of February 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE